Maxwell D. Herman (Attorney ID No. 134202014)
BREWER STOREFRONT, PLLC
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (212) 224-6324
Facsimile:  (214) 653-1015

ATTORNEY FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SHIRLY KORCHAK,** | § | **CASE NO.** |
| | § | |
| **Plaintiff,** | § | **Honorable _____** |
| | § | **District Court Judge** |
| **v.** | § | |
| | § | **Jury Trial** |
| **JOHN DOE, user of Facebook profiles** | § | |
| **"Moore Nicole," "Korchak Shirl,"** | § | |
| **"Brian Mc," "Rocky Rowe," and "Chi** | § | |
| **Chi," and JANE DOES 1-30,** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Shirly Korchak files this Complaint and Jury Demand against defendant John Doe,

user of Facebook profiles "Moore Nicole," "Korchak Shirl," "Brian Mc," "Rocky Rowe," and

"Chi Chi," and Jane Does 1-30, upon personal knowledge as to her own actions and upon

information and belief as to all others, as follows:

### I.

### PRELIMINARY STATEMENT

For nearly two years, Plaintiff Shirly Korchak ("Plaintiff" or "Ms. Korchak") has been

subjected to a systematic, escalating campaign of online harassment and defamation by defendant

John Doe ("Defendant") intended to humiliate Ms. Korchak and destroy her good name.

Defendant's unprovoked campaign has injured Ms. Korchak's reputation and relationships and caused her to suffer emotional, physical, and financial harm. Meanwhile, Defendant, who stalks Ms. Korchak using various online pseudonyms, remains anonymous.

Accordingly, Ms. Korchak brings this action for injunctive relief restraining Defendant from continued tortious conduct, and for damages that compensate her for the damages inflicted by Defendant from behind the safety of a keyboard. Ms. Korchak also seeks punitive damages that punish Defendant for his malicious and unjustified conduct, as well as all other such relief the Court deems just and proper.

## II.

## THE PARTIES

### A.    Plaintiff.

1.    Shirly Korchak is a 36-year old graphic designer and resident of Monmouth County, New Jersey. Prior to September 2018, Ms. Korchak was a resident of New York County, New York. Ms. Korchak lives with her fiancée Brent Blythe and their infant child.

### B.    Defendants.

2.    Defendant John Doe is the anonymous user of Facebook profiles "Moore Nicole," "Korchak Shirl," "Brian Mc," "Rocky Rowe," and "Chi Chi." John Doe is a fictitious name.

3.    Plaintiff brings this action against an anonymous person pursuant to New Jersey Court Rule 4:26-4. Plaintiff will amend this Complaint to reflect Defendant's true name and capacity when it has been ascertained. Defendant is legally responsible for the events and happenings referred to in this Complaint, and negligently or otherwise unlawfully caused injuries and damages to Plaintiff as a result.

4.    Jane Does 1-30 (together with Defendant, "Defendants") are anonymous actors that control, assist, or work at the direction of Defendant. At all times mentioned in this Complaint,

2

each of the Defendants was the agent and employee of the other Defendants, and in doing the things alleged in this Complaint, the Defendants were acting within the course and scope of their agency and employment.

5.      Defendants are residents of a foreign state.  The tortious and otherwise unlawful conduct described herein began while Plaintiff was a resident of the State of New York and had been for a decade.  According to Defendant's profiles "Chi Chi" and "Korchak Shirl," Defendant is a resident of Austin, Texas, and West Hollywood, California.  Defendant does not identify any other place of residence on his profiles.  In addition, the alleged defamatory statements described herein "do not concern a local matter and could have been posted online by anyone in the world connected to the internet."[1]

### III.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter on the basis of diversity pursuant to 28 U.S.C. § 1332(a)(1), on the grounds that the instant dispute involves citizens of different states and the amount in controversy exceeds $75,000.00.

7.      Venue in the District of New Jersey is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred within the District of New Jersey.

---

[1] *See, e.g., Getaway.com LLC v. Does*, No. CV 15-531-SLR, 2015 WL 4596413, at *2 (D. Del. July 30, 2015) (allowing litigation to proceed against anonymous online defendant on diversity jurisdiction where plaintiff credibly alleged that defendant likely was a resident of a foreign state).

## IV.

## FACTUAL BACKGROUND

**A.**     **Plaintiff meets her future husband.**

8.     In early 2017, Ms. Korchak lived in Manhattan, New York, and worked as a graphic designer.

9.     On April 15, 2017, Ms. Korchak went on a first date with Brent Blythe.  Mr. Blythe also resided in Manhattan and worked at a consulting firm.

10.     Throughout April and May, Ms. Korchak and Mr. Blythe saw each other regularly. They met for dinner, movies, and a Broadway show.

11.     On May 22, 2017, Ms. Korchak and Mr. Blythe announced to family and friends on the social networking platform "Facebook" that they were in a romantic relationship. Ms. Korchak was elated.   Unfortunately, Defendant chose to begin a campaign to harm Ms. Korchak's relationship, emotional health, and reputation shortly thereafter.

**B.**     **Defendant Begins A Campaign Intended To Harm Ms. Korchak's Romantic Relationship, Cause Her Severe Emotional Distress, And Destroy Her Good Name.**

12.     In May 2017, Ms. Korchak and Mr. Blythe maintained individual social "profiles" on Facebook, which described their social characteristics and provided updates to family and friends on their personal lives.

13.     On or before May 24, 2017, Defendant created public profile "Brian Mc" on Facebook at http://www.facebook.com/100010911330949.   Brian Mc is a pseudonym intended to hide Defendant's identity.  Brian Mc has no social characteristics, such as Facebook "friends," "interests," or "activities," and was created solely to harass and defame Ms. Korchak.

14.     On May 24, 2017, Defendant sent Ms. Korchak a message on Facebook from the Brian Mc profile under the guise of a good Samaritan.  Defendant's true intention was to create a

divide between Ms. Korchak and Mr. Blythe.  In the message, Defendant claimed that Mr. Blythe "is not one to date one girl exclusively.  Never has, just in case that is what you have in mind."

15.    When Ms. Korchak denied Defendant's unsubstantiated accusation, Defendant became angry.  Defendant responded:  "You are such a trashy bimbo…no wonder you aren't married at your age.  He's already f[***]ing others besides you and always will.  And its not me. I'm hetero. *** You are a bimbo that he will f[***] until he's bored like all the others.  Why don't you ask him why he doesn't update his relationship status?  Good luck sweetie, I had to warn you but looks like you are now very upset.  Just remember my warning after its (sic) all over."

16.    Defendant's statements were and remain false.

17.    Defendant's anonymous, angry messages and false accusations were the first in a long series of conduct by Defendant that individually and cumulatively disrupted Ms. Korchak's life and caused her great stress, anger, and anxiety that impaired her ability to concentrate and function effectively in day-to-day activities.  Defendant's conduct also caused severe strain on Ms. Korchak's relationship with Mr. Blythe, as well as with Ms. Korchak's family.

**C.    Defendant Anonymously Messages Ms. Korchak's Sister In An Effort To Harm Ms. Korchak's Relationship With Mr. Blythe.**

18.    On or before October 23, 2017, Defendant created public Facebook profile "Rocky Rowe" at http://www.facebook.com/roxx.ransky.3.  Rocky Rowe is a pseudonym intended to hide Defendant's identity.  Like Brian Mc, Rocky Rowe has no social characteristics and was created solely to harass Ms. Korchak.

19.    On or about October 23, 2017, Defendant sent Ms. Korchak's sister a message on Facebook from Rocky Rowe.  In the message, Defendant repeated and embellished the accusations sent from Brian Mc.

20.     Defendant told Ms. Korchak's sister that Mr. Blythe "has been cheating on [Ms. Korchak] since the beginning.  Frankly she knows nothing about him.  It s (sic) very difficult to make her see whats (sic) really going on.  Sad but don't know how to bring it up to her to see reality."

21.     When Ms. Korchak's sister demanded proof, Defendant replied:  "Proof as in I know the woman.  She has been my friend forever.  They see each other whenever they can for fun and you know what.  It's not big deal for her m (sic) and frankly don't know if she's the only one either."

22.     Defendant's statements were and remain false and were intended solely to harm Ms. Korchak and her relationship with Mr. Blythe.

23.     Ms. Korchak's sister shared the communications with Ms. Korchak.

24.     Defendant's anonymous, angry messages and false accusations individually and cumulatively disrupted Ms. Korchak's life and caused her great stress, anger, and anxiety that impaired her ability to concentrate and function effectively in day-to-day activities.  Defendant's conduct also caused severe strain on Ms. Korchak's relationship with Mr. Blythe, as well as with Ms. Korchak's family.

**D.     Defendant Anonymously Publishes Degrading And Defamatory Statements Concerning Ms. Korchak After She Announces That She Is Pregnant.**

25.     In December 2017, Ms. Korchak and Mr. Blythe learned that Ms. Korchak was pregnant with their first child.  They announced the pregnancy to family and friends on Facebook.

26.     That month, Ms. Korchak also learned that Defendant created public Facebook profile "Chi Chi" at https://www.facebook.com/100009160947544.  Chi Chi is a pseudonym intended to hide Defendant's identity.  Defendant identifies his location on Chi Chi as Austin, Texas.

6

27.     Days after the pregnancy announcement, Defendant shed any pretense of good Samaritan and began to publish false, degrading, and defamatory comments concerning Ms. Korchak on photographs posted on public Facebook business profiles "Ike Love Jones" and "iVive H2O."  Defendant would do so repeatedly from December 2017 through November 2018.

28.     Ike Love Jones is a professional photography company.  In 2011, Ike Love Jones took impromptu photographs of Ms. Korchak while she was at the beach with friends.  Ms. Korchak authorized Ike Love Jones to publicly post the photographs online at that time.

29.     iVive H2O is a professional promotions company.   In 2011, iVive H2O took photographs of Ms. Korchak while she modeled swimsuit apparel at a fashion show in Manhattan. Ms. Korchak, who is not a professional model, agreed to model the apparel on behalf of the designer, who is Ms. Korchak's personal friend.  Ms. Korchak authorized iVive H2O to publicly post the photographs online at that time.

30.     In December 2017, Defendant published the following public comments on photographs posted on Ike Love Jones and iVive H2O profiles using Chi Chi:

    a.    "Bet the baggie implants are hanging down to her huge stomach by now . (sic) Gross."
    b.    "Crying because she's a Jersey skank that's only worth a bj."
    c.    "Look at the purple skank in front with the fake boobs.  'The look you make when your (sic) naked, trashed and looking for your next BJ.'  Lol."

31.     Defendant published the above statements with the intent to inflict mental and emotional damage on Ms. Korchak, particularly because Ms. Korchak had just learned she was pregnant.

32.     Defendant's publication of these statements, which were seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.  In addition, Defendant's false statements damaged

Ms. Korchak's good name and reputation.

**E.    Defendant Anonymously Publishes Degrading And Defamatory Statements Concerning Ms. Korchak After She Announces That She Is Engaged.**

33.    On February 11, 2018, Ms. Korchak became engaged to Mr. Blythe.  Ms. Korchak announced the engagement on Facebook.

34.    Two days later, on or about February 13, 2018, Defendant published another series of false, degrading, and defamatory comments on public photographs of Ms. Korchak using Chi Chi, including:

      a.    "Fake tits and sumo wrestler thighs.  Gross blonde chick in purple does every guy that comes by."

      b.    "Wow.  Sorry but the fake boobs and gigantic thighs on the bimbo in the left makes me want to puke.  Heard she did every guy in Monmouth."

35.    Defendant published the above statements with the intent to inflict mental and emotional damage on Ms. Korchak, particularly because she had just become engaged.

36.    Defendant's publication of these statements, which were seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.   In addition, Defendant's false statements damaged Ms. Korchak's good name and reputation.

**F.    Defendant Anonymously Messages Ms. Korchak's Mother In A Continued Effort To Harm Ms. Korchak's Relationship With Mr. Blythe.**

37.    On or before April 13, 2018, Defendant changed the name of profile Brian Mc to "Alberto Dee."  Alberto Dee is a pseudonym intended to hide Defendant's identity.

38.    On April 13, 2018, Defendant sent Ms. Korchak's mother a Facebook message from Alberto Dee.  In the message, Defendant wrote:  "Its (sic) important that you know now that

shirly's boyfriend has been cheating on her.  He is very good at hiding things.  Shirly is so  (sic) in love she just can't see it."

39.     Defendant's statement was and remains false and was intended solely to harm Ms. Korchak and her relationship with Mr. Blythe.

40.     Ms. Korchak's mother shared Defendant's false accusation with Ms. Korchak.  As a result, Ms. Korchak suffered further stress, anger, and anxiety that impaired her ability to concentrate and function effectively in day-to-day activities.

**G.     Defendant Anonymously Publishes Additional Degrading And Defamatory Statements Concerning Ms. Korchak.**

41.     In May and June 2018, Defendant returned to the public photographs of Ms. Korchak posted on Ike Love Jones and iVive H2O.

42.     Using profile Chi Chi, Defendant published additional false, harassing, and defamatory comments concerning Ms. Korchak, including:

> a.     "Bimbo with thunder thighs and fake boobs on the left looks like a piece of trash."
> b.     "This shirly Kirchak chick has some issues.  Flashing some kind of ring on a fake profile.?  Hmm finally got someone to marry her old ass.  That ring is huge, gaudy and fake looking just like her.  Karma."
> c.     "Barf"
> d.     "Fake boobs hanging down to her fat thighs by now.  Old piece of Jersey trash."

43.     Defendant published the above statements with the intent to inflict mental and emotional damage on Ms. Korchak.

44.     Defendant's publication of these statements, which were seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.  In addition, Defendant's false statements damaged Ms. Korchak's good name and reputation.  The emotional distress caused by Defendant would

contribute to the subsequent life-threatening, premature birth of her child.

**H.    Defendant Creates A Profile To Impersonate And Defame Ms. Korchak.**

45.    In or before July 2018, and just prior to the premature birth of Ms. Korchak's child, Defendant created public Facebook profile "Korchak Shirl" at https://www.facebook.com/alli.kors.3.  Korchak Shirl is a corruption of Plaintiff's name intended to impersonate, caricature, and defame Ms. Korchak.  The Korchak Shirl profile has no social characteristics and was created to harass, disturb, and defame Ms. Korchak.  Defendant identifies his location on Korchak Shirl as "West Hollywood, California."  As a profile picture, Defendant used a photograph of Miss Piggy from Jim Henson's The Muppets®.  In the photograph, Miss Piggy is pregnant.

46.    Defendant provided the following description for Korchak Shirl:  "Moi-short, flattish has been model for sleazy jobs and mens (sic) clubs. But forever a bleach blonde bimbo," and published a meme with the caption:  "Skankles are what you get when you become a fat whore, be careful."

47.    Ms. Korchak, her friends, and her family discovered the impersonating public profile in early July 2018, just prior to the premature birth of Ms. Korchak's child as a result of undue stress.

48.    Defendant's creation of Korchak Shirl, which was seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.  In addition, Defendant's false statements damaged Ms. Korchak's good name and reputation.  The emotional distress caused by Defendant would contribute to the subsequent life-threatening, premature birth of her child.

I.    **Defendant Anonymously Messages Ms. Korchak's Family And Publishes Additional Defamatory Statements Concerning Ms. Korchak After She Announces The Birth Of Her First-Born Child.**

49.    In early July 2018, Ms. Korchak entered labor more than a month before her due date.  The premature labor gave rise to significant, life-threatening complications for Ms. Korchak and her child, both of whom were forced to remain in the hospital for several weeks after the birth and incurred significant medical expenses as a result.  Doctors concluded that the premature birth was due to significant, undue stress.  Defendant's relentless hounding of Ms. Korchak and attacks on her reputation, morality, and romantic relationship with the father of her child over the prior fourteen (14) months were major contributors to that undue stress.

50.    Ms. Korchak announced the birth of her child on Facebook that month.

51.    Soon after, on or about July 22, 2018, Defendant created public Facebook profile "Moore Nicole" at https://www.facebook.com/nicki.moores.7.  Moore Nicole is a pseudonym intended to hide Defendant's identity.  Moore Nicole has no social characteristics, such as friends or interests, and was created solely to harass Ms. Korchak.

52.    On or about July 22, 2018, Defendant sent Ms. Korchak's sister another Facebook message from Moore Nicole intended solely to cause Ms. Korchak, who would inevitably learn of the message, additional emotional distress.  In the message, Defendant wrote:  "Your sister is in over her head with this baby blythe reality show she got herself into.  Not easy and not looking good.  I hope he doesn't bail on her in a year.  Most think so."

53.    Then, in or about early August 2018, Defendant returned to the public photographs of Ms. Korchak on Ike Love Jones and iVive H2O.  Using profile Chi Chi, Defendant published the following false, derogatory, and defamatory statement:   "Haha The (sic) chick on the right is barfing in this photo.  She got herself knocked up since this at age 40 something without a husband .  (sic) Loser all these years.  Wonder where her porno flicks ended up."

54.     Ms. Korchak has never been involved in pornography in any manner.

55.     Days later, on August 17, 2018, Defendant sent Ms. Korchak's mother another Facebook message, which was inevitably shared with Ms. Korchak.   Using Moore Nicole, Defendant wrote:  "So sorry to hear that your daughter had an illegitimate baby out of wedlock. Its (sic) not easy to be a single mother with a man who 'does what he wants' on the side.  We are praying for her.  Not looking good so sad."

56.     Defendant published the above statement and sent the above messages with the intent to inflict significant mental and emotional damage on Ms. Korchak, particularly because she had just given birth to her first child.

57.     Defendant's publication of these statements, which were seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, as well as the messages to her family, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.  In addition, Defendant's false statements damaged Ms. Korchak's good name and reputation.

**J.      Defendant Escalates His Efforts To Degrade and Defame Ms. Korchak.**

58.     On July 30, 2018, Defendant published a meme on Korchak Shirl's profile wall. The meme read:  "Be the girl you want your daughter to be[;] your son to date[;] be classy, not trashy."  Defendant provided the caption:  "too late for some," as posted by Korchak Shirl.

59.     On the evening of September 8, 2018, and early morning of September 9, 2018, Defendant published a series of derogatory and defamatory statements on Korchak Shirl's public wall concerning Ms. Korchak, as posted by Korchak Shirl.  The statements included:

      a.      "I wish I could speak … Like an intelligent woman."
      b.      "I can't stand when … My fat thighs rub against each other and I'm out of vasoline (sic)."
      c.      "If I only have an hour of free time to spend, I'll do … Every guy I can find."

12

d.    "My favourite routine is … Is (sic) putting on fake eyelashes."

e.    "I can't stand when … Guys stare at my fake boobs."

f.    "My typical excuse when I don't want to go to the gym is … I'm already fat what's the point."

g.    "Stilettos or Flats?" "Stilettos so guys think Im (sic) a whore an I can be taller than 4'10."

h.    "A song that defines me is … Brick house."

i.    "If I were a musical instrument, I would be … A tuba."

j.    "One of the first homework assignments I failed was … essay (sic) on how to become a smart intelligent adult and not a sleazy bimbo."

k.    "Between texting and calling, I prefer … Some sex from any guy that'll have me."

l.    "One of the first homework assignments I failed was … An essay on how to act and dress like an intelligent adult."

60.    Ms. Korchak's birthday is September 9, 2018.  Ms. Korchak's birthday is disclosed on her Facebook profile.

61.    On September 19, 2018, Defendant again published a series of derogatory and defamatory statements on Korchak Shirl's public wall concerning Ms. Korchak, as follows:

a.    "The most memorable costume I've worn is … All my Slut (sic) whore costumes are also my regular daily clothes."

b.    "I got overexcited when … A guy actually thought I'm smart."

c.    "A perfect date would be … Just going straight to the bedroom.  My typical date."

d.    "When I start reading a book and get bored on the second page I … Realize I'm not smart enough to read books."

e.    "I wish … I wasn't a slut."

f.    "A great honeymoon would be … Sleeping with all the island native men."

g.    "I cannot stand when my mom … Says I will be as fat as her in the future."

h.    "One of the best foods in the world is … I eat anything can't you tell."

i.    "My first crush was when I was … 4 it went south after that."

j.    "For me freedom means … Letting my fake boobs hang down to my stomach."

k.    "One of my most valuable treasures is … My fake eyelashes and slut underwear."

l.    "I'm careful about … Which porn flicks and night clubs I agree to work nude for."

62.    The following day, Defendant published a video montage of women tripping and falling to the ground with the caption:  "Ugh I hate when that happens…story of my life."

63.    On September 21, 2018, Defendant published a derogatory and defamatory

statement on Korchak Shirl's public wall concerning the care Ms. Korchak provides to her child, as posted by Korchak Shirl: "For me, there's no better therapy than … having someone else take care of my kid so I can party."

64.     On November 16, 2018, Defendant published a third series of derogatory and defamatory statements on Korchak Shirl's public wall, as follows:

> a.   "Once I entered a contest for … Miss Trailer Trash."
> b.   "The worst excuse I've heard recently was … Honey, I had a late night meeting, I swear."
> c.   "A weird job I had was … Give old men lap dances at the strip club I worked at."
> d.   "If I could live for a week in the past or the future, I'd rather … Live in the past when I can bang all the college guys again.  I'm so f##king old."
> e.   "My favorite routine is … rubbing vasoline (sic) between my fat thighs."
> f.   "When I was a kid I was afraid of … becoming fat.  Now, here I am."
> g.   "I wish … I wasn't such a trashy bimbo."
> h.   "Whenever I go to karaoke, I sing … Like a Virgin (Brings my (sic) back to the days before I turned 13)."
> i.   "Do you prefer shopping or picnicking … Well I need to keep buying bigger slutty clothes but I love eating those huge turkey thighs and cakes so..both."
> j.   "If I could be a fictional character, I'd be … Well I look like Miss Piggy !"
> k.   "I discovered that I'm really good at … Looking like a cheat piece of trash."

65.     All of the above statements of fact were and remain false.  Ms. Korchak has never been involved in pornography or worked at a gentleman's club and has always maintained a good reputation for moral character.

66.     Defendant published the above statements with the intent to inflict mental and emotional damage on Ms. Korchak.

67.     Defendant's publication of these statements, which were seen by Ms. Korchak, her family, friends, acquaintances, and hundreds or thousands of other Facebook users, individually and cumulatively disrupted Ms. Korchak's life and exacerbated the stress, anger, and anxiety already caused by Defendant's conduct.  In addition, Defendant's false statements damaged Ms. Korchak's good name and reputation.

**K.     Defendant Anonymously Publishes Degrading Statements Concerning Ms. Korchak Using Profiles Chi Chi and Korchak Shirl In Tandem.**

68.     On or about September 30, 2018, Ms. Korchak was contacted by Sarah Sanders, owner of a professional photography business named Sarah Sanders Photography.

69.     Earlier that month, Ms. Sanders had taken a series of professional photographs of Ms. Korchak, Mr. Blythe, and their infant child.  After the shoot, Ms. Korchak authorized Ms. Sanders to post some of the photographs on Ms. Sanders' public Facebook business profile.

70.     Ms. Sanders informed Ms. Korchak that Defendant, using both Chi Chi and Korchak Shirl, had published derogatory comments concerning Ms. Korchak on photographs posted to Sarah Sanders Photography.  Ms. Sanders removed the comments, but Defendant "repeatedly" republished the comments.

71.     Ms. Sanders sent Ms. Korchak a screenshot of the comments to Ms. Korchak.

72.     Defendant commented via Chi Chi:  "Wow isn't that a blast from the past Shirly? OMG who can forget those thighs and profile."

73.     Two hours later, Defendant commented via Korchak Shirl:  "Love those thighs on moi.  Sexy Miss Piggy."

74.     Ms. Korchak, humiliated, was forced to explain to Ms. Sanders that she is the subject of long-term harassment and stalking by Defendant.  Defendant's conduct and the resulting interaction with Ms. Sanders further exacerbated the stress, anger, and anxiety caused by Defendant's conduct.

**L.     Defendant Anonymously Threatens Ms. Korchak, Mr. Blythe, And Their Infant Child With Death By Infection.**

75.     On November 25, 2018, Defendant published two photographs to Korchak Shirl's public wall.  Terrifyingly, pictured in the photographs are Ms. Korchak and her infant child.  The caption reads:  "Decisions, decisions.  Which outfit to wear to the family holiday dinner.  Trailer

15

Trash midriff?  Or see through fat slut mama."  The photographs and caption confirm beyond any doubt that the prior defamatory statements published on Korchak Shirl's wall by Defendant (via Korchak Shirl) refer to Ms. Korchak.

76.    For nine (9) days, Defendant did not publish any additional content.  Then, on December 4, 2018, Defendant published the following website link on Korchak Shirl's wall immediately above the photographs of Ms. Korchak and her infant child:

> https://youtube.com/watch?v=wU2HYK8jQw&feature=youtu.be&fbclid=lwAR3GXn1
> WO24jkacUmjE6fWJeJSrBRBEMdql5EjfUocxGPTDjZcELkRG4KFE.

77.    The link takes the viewer to a newsreel posted by the Washington Post with the title "Illinois politician faces backlash after she wished severe illness on her colleague" starts to play.  The newsreel begins:

> "I would like to make him a broth of Legionella and pump it into the water system of his loved one so that they can be infected, they can be mistreated, they can sit and suffer, by getting aspirin instead of being properly treated and ultimately die."

78.    Defendant posted the link above Ms. Korchak and her child's photographs as a thinly-veiled threat to Ms. Korchak and her young family.  Defendant never previously or thereafter demonstrated any interest in news or current events.

79.    Defendant's conduct caused Ms. Korchak to experience severe fear and exacerbated her stress, anger, and anxiety.

**M.    The Damage Done**

80.    Ms. Korchak has been harmed by Defendant's anonymous, relentless, and malicious efforts to cause her emotional distress by publication of false, derogatory, defamatory, and threatening comments on Facebook and by sending anonymous, false accusations to Ms. Korchak and her family.  Ms. Korchak has experienced severe humiliation, stress, anxiety,

paranoia, anger, and fear over the last twenty (20) months, exacerbated by the cumulative and relentless nature of the conduct, as well as by Defendant's anonymity.

81.    As an additional result, Ms. Korchak experiences debilitating anxiety when appearing in public spaces and feelings of fear and terror when alone in her home, which cause her to avoid public interaction and necessitate that Mr. Blythe remain at home rather than commute to his job in Manhattan whenever possible.  Ms. Korchak also experiences significant difficulty trusting new acquaintances.

82.    Ms. Korchak has been forced to share Defendant's conduct and false accusations with family, friends, and neighbors in order to appraise them of the threat to physical safety presented by Defendant, a stalker.  This interaction has caused further embarrassment and humiliation for Ms. Korchak and has resulted in the distancing of some acquaintances.

83.    Ms. Korchak's emotional distress has manifested physically.  As a result of Defendant's conduct, Ms. Korchak suffered serious stress-related birth complications during her pregnancy that threatened her life and the life of her child.  Ms. Korchak also experiences difficulty nursing her child and headaches as a result of the stress, anxiety, and fear caused by Defendant, particularly when Defendant publishes new content.

84.    Ms. Korchak's reputation has been harmed.  Defendant's publication of false statements of fact on Facebook that have been seen by hundreds or even thousands of third parties, in addition to Ms. Korchak's family, friends, neighbors, acquaintances, and business associates, have caused significant presumed and actual damage to Ms. Korchak's reputation.  Defendant's statements falsely accuse Ms. Korchak of immoral sexual conduct, unfitness as a mother, participation in pornography, and work as an erotic dancer, among other things.  These accusations

had a presumed and real deleterious effect on Ms. Korchak's reputation, which has always stood for good moral conduct and character.

85.     Ms. Korchak has suffered financial harm as a result of Defendant's conduct. Specifically, Ms. Korchak has been forced to purchase a home security system and 24/7 home video surveillance system in order to protect her family and experience a modicum of feelings of safety in her home.  She is also seeking professional therapy for the aforementioned emotional and physical harm, as well as couples therapy to address the damages caused by Defendant to her relationship with Mr. Blythe and must bear the costs of that treatment as well.  Finally, Ms. Korchak was forced to bear the costs associated with medical care related to the premature birth of her child and the resulting life-threatening complications that resulted from undue stress, to which Defendant's conduct was a significant contributor.

## V.

## CAUSES OF ACTION

**A.     First Cause Of Action:  Libel.**

86.     Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

87.     At all times prior to Defendant's publication of defamatory statements on Facebook, Plaintiff had maintained a good name and reputation among her family, neighbors, acquaintances, and friends for virtue, moral worth, and integrity.

88.     Between December 2017 and November 2018, Defendant, with the intent to injure Plaintiff and her reputation, maliciously published the following false, scandalous, and defamatory statements on various public personal and business Facebook profiles.

89.     On or about December 2017, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff is a "skank."[2]

90.     On or about December 2017, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana that Plaintiff is a "skank."

91.     On or about February 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana that Plaintiff "does every guy that comes by."

92.     On or about February 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff "did every guy in Monmouth [University]," where Plaintiff attended college.

93.     On or about July 2018, Defendant publicly posted on the profile Korchak Shirl, that Plaintiff "has been a model for sleazy jobs and mens (sic) clubs."

94.     On or about July 2018, Defendant publicly posted on the profile Korchak Shirl that Plaintiff is a "whore."

95.     On or about August 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana: "Wonder where [Plaintiff's] porno flicks ended up."

96.     On or about September 8, 2018, Defendant publicly posted on the profile Korchak Shirl that if Plaintiff "ha[s] only an hour of free time to spend, [she]'ll do … Every guy [she] can

---

[2] The term "skank" is commonly known and defined by the Oxford Dictionary as "[a] woman who has many casual sexual encounters or relationships."

find."  Defendant further wrote that "Between texting and calling, [Plaintiff] prefer[s] … Some sex from any guy that'll have [Plaintiff]."

97.     On or about September 19, 2018, Defendant publicly posted on the profile Korchak Shirl that Plaintiff's "perfect date would be … Just going straight to the bedroom.  [Plaintiff's] typical date."  Defendant further wrote that Plaintiff "wish[es] … [she] wasn't a slut" and that "[a] great honeymoon [for Plaintiff] would be … Sleeping with all the island native men."

98.     On or about September 19, 2018, Defendant publicly posted on the profile Korchak Shirl that "[Plaintiff is] careful about … Which porn flicks and night clubs [she] agree[s] to work nude for."

99.     On or about November 16, 2018, Defendant publicly posted on the profile Korchak Shirl that "[a] weird job [Plaintiff] had was … Give (sic) old men lap dances at the strip club [Plaintiff] worked at."

100.    By the written publication of such words, Defendant intended to charge, and did charge, that Plaintiff engages in morally reprehensible sexual conduct, prostitution, pornography, and erotic dancing.  Such statements were understood by their recipients to mean what Defendant intended.

101.    Defendant's statements were in every particular false, defamatory, libelous, unprivileged, and malicious, and remain as such.  Plaintiff is not and has never been a prostitute, pornographic actress, or erotic dancer, and has always maintained a reputation for good moral character.

102.    Defendant's statements were published on public personal and business profiles on Facebook, an international social media platform with 2.2 billion monthly active users as of January 2018, and were viewed by Plaintiff's family, friends, acquaintances, and business

associates, among hundreds or even thousands of other Facebook users, including Plaintiff's sister, mother, and Mr. Blythe.

103.    Defendant's statements are libel because they are written defamatory statements. Defendant's statements are additionally defamatory *per* se because they falsely accuse Plaintiff of serious sexual misconduct and because they subject Plaintiff to ridicule, contempt, and disgrace.

104.    As a result of Defendant's statements, Plaintiff has suffered presumed and actual injury in her good name and reputation and suffered grievous mental and physical suffering and humiliation.

**B.**     **Second Cause Of Action – Invasion Of Privacy (False Light).**

105.    Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

106.    Between December 2017 and November 2018, Defendant, with the intent to injure Plaintiff, falsely and maliciously published on various public personal and business Facebook profiles the following false statements concerning Plaintiff that a reasonable person in Plaintiff's position would either be expected to take serious offense to or be justified in feeling offended or aggrieved as a result:

107.    On or about December 2017, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff was "Crying because she's a Jersey skank that's only worth a bj."

108.    On or about December 2017, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana that Plaintiff is a "skank" making "[t]he look you make when your (sic) naked, trashed and looking for your next BJ . . . ."

109.    On or about February 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana that Plaintiff is a "[g]ross blonde chick in purple [that] does every guy that comes by."

110.    On or about February 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff is a "bimbo" that "makes [Defendant] want to puke" and "did every guy in Monmouth [University]."

111.    On or about May 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff is a "[b]imbo with thunder thighs" and "looks like a piece of trash."

112.    On or about June 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile Ike Love Jones that Plaintiff's breasts are "hanging down to her fat thighs by now" and that Plaintiff is an "[o]ld piece of Jersey trash."

113.    On or about June 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana that Plaintiff "has some issues.  Flashing some kind of ring on a fake profile.? (sic)  Hmm finally got someone to marry her old ass.  That ring is huge, gaudy and fake looking just like her.  Karma."

114.    On or about July 2018, Defendant publicly posted on the profile Korchak Shirl that Plaintiff "has been a model for sleazy jobs and mens clubs."

115.    On or about July 2018, Defendant publicly posted on the profile Korchak Shirl that Plaintiff is a "fat whore."

116.    On or about July 30, 2018, Defendant publicly posted on the profile Korchak Shirl that it is "too late" for Plaintiff to "be classy, not trashy."

117.    On or about August 2018, Defendant publicly commented on a photograph of Plaintiff featured on the public Facebook business profile iVive H2O – Tu Obsesion Hispana:  "Wonder where [Plaintiff's] porno flicks ended up."

118.    Between September 8 and November 16, 2018, Defendant publicly posted on the profile Korchak Shirl the following statements in reference to Plaintiff:

a.    "I wish I could speak … Like an intelligent woman."
b.    "I can't stand when … My fat thighs rub against each other and I'm out of vasoline (sic)."
c.    "If I only have an hour of free time to spend, I'll do … Every guy I can find."
d.    "My favourite routine is … Is (sic) putting on fake eyelashes."
e.    "My typical excuse when I don't want to go to the gym is … I'm already fat what's the point."
f.    "Stilettos or Flats?" "Stilettos so guys think Im (sic) a whore an I can be taller than 4'10."
g.    "One of the first homework assignments I failed was … "essay (sic) on how to become a smart intelligent adult and not a sleazy bimbo."
h.    "Between texting and calling, I prefer … Some sex from any guy that'll have me."
i.    "One of the first homework assignments I failed was … An essay on how to act and dress like an intelligent adult."
j.    "The most memorable costume I've worn is … All my Slut (sic) whore costumes are also my regular daily clothes."
k.    "I got overexcited when … A guy actually thought I'm smart."
l.    "A perfect date would be … Just going straight to the bedroom.  My typical date."
m.    "When I start reading a book and get bored on the second page I … Realize I'm not smart enough to read books."
n.    "I wish … I wasn't a slut."
o.    "A great honeymoon would be … Sleeping with all the island native men."
p.    "One of the best foods in the world is … I eat anything can't you tell."
q.    "I'm careful about … Which porn flicks and night clubs I agree to work nude for."
r.    "Once I entered a contest for … Miss Trailer Trash."
s.    "A weird job I had was … Give old men lap dances at the strip club I worked at."
t.    "If I could live for a week in the past or the future, I'd rather … Live in the past when I can bang all the college guys again.  I'm so f##king old."
u.    "My favorite routine is … rubbing vasoline (sic) between my fat thighs."
v.    "When I was a kid I was afraid of … becoming fat.  Now, here I am."
w.    "I wish … I wasn't such a trashy bimbo."

x.    "Whenever I go to karaoke, I sing … Like a Virgin (Brings my (sic) back to the days before I turned 13)."

y.    "Do you prefer shopping or picnicking … Well I need to keep buying bigger slutty clothes but I love eating those huge turkey thighs and cakes so..both."

z.    "I discovered that I'm really good at … Looking like a cheat piece of trash."

119.    On or about November 25, 2018, Defendant publicly posted on the profile Korchak Shirl two photographs of Plaintiff and the caption:  "Decisions, decisions.  Which outfit to wear to the family holiday dinner.  Trailer Trash midriff?  Or see through fat slut mama."

120.    At all relevant times, Defendant had knowledge of, or acted in reckless disregard of, the falsity of his statements and the false light in which Plaintiff would be placed, particularly because Plaintiff has never been involved in pornography or erotic dancing and has always maintained a reputation for good moral character.

121.    By the written publication of such words, Defendant intended to cause Plaintiff to appear before the public in a false light.  Specifically, Defendant intended to cause and did cause the public to believe that Plaintiff is sexually immoral and promiscuous, physically grotesque, unintelligent and illiterate, a neglectful mother, and a sex worker.  Such statements were understood by its recipients to mean what Defendant intended.

122.    Defendant's statements were in every particular false, defamatory, libelous, unprivileged, and malicious, and remain as such.

123.    Defendant's statements were published on public personal and business profiles on Facebook, an international social media platform with 2.2 billion monthly active users as of January 2018, and were viewed by Plaintiff's family, friends, acquaintances, and business associates, and hundreds or even thousands of other Facebook users, including Plaintiff's sister, mother, and Mr. Blythe.

124.    The false light in which Defendant placed Plaintiff is severely offensive and would be severely offensive to a reasonable person as it concerns sexual misconduct, engagement in sex and sex-related acts for money, a physically grotesque appearance, and a lack of intelligence.

125.    As a result of Defendant's statements, Plaintiff has suffered injury in her good name and reputation and suffered grievous mental and physical suffering and humiliation.

C.    **Third Cause Of Action – Invasion Of Privacy (Intrusion Into Seclusion).**

126.    Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein

127.    For twenty (20 months), from May 2017 through December 2018, and continuing, Defendant intentionally and repeatedly intruded upon Plaintiff's solitude and seclusion.

128.    Defendant intruded upon Plaintiff's solitude and seclusion by repeatedly and persistently hounding, harassing, demeaning, defaming, humiliating, and threatening Plaintiff for nearly two years such that Defendant's conduct became a substantial burden to Plaintiff's day-to-day existence.

129.    Specifically, since May 2017, Defendant has attempted to interfere with Plaintiff's romantic relationship, suggested her unfitness as a mother, threatened her with physical harm, and published numerous other varied derogatory and defamatory statements, as set forth in paragraphs 12-79 of this Complaint.

130.    Defendant's conduct been persistent throughout this period and increasing in frequency.   In fact, in the last twenty (20) months, Defendant has published content or sent messages concerning Plaintiff at least forty-two (42) different times, an average of more than twice every month, including throughout the entirety of Plaintiff's pregnancy.

131.    Defendant acted at all relevant times with malicious intent to cause Plaintiff serious emotional distress, or at very least with a wanton and willful disregard of the serious emotional distress that Plaintiff would certainly suffer as a result of his despicable and morally gross conduct.

132.    Defendant's conduct was and remains highly offensive to Plaintiff and would be highly offensive to a reasonable person, as it concerns her romantic relationship, fitness as a mother, sexual dignity, and falsely accuses her of involvement in pornography and erotic dancing.

133.    The aforesaid actions by Defendant represent an unreasonable intrusion into Plaintiff's right to live free of Defendant's interference, defamation, and threats, and constitute an invasion of Plaintiff's right to privacy.

134.    As a result of Defendant's conduct, Plaintiff's privacy was and continues to be invaded.  Plaintiff has also suffered grievous mental and physical suffering and humiliation. Plaintiff has further been forced to spend money on security measures for her home and medical costs related to complications of pregnancy and will be forced to bear the cost of therapy.

**D.    <u>Fourth Cause Of Action – Intentional Infliction Of Emotional Distress.</u>**

135.    Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

136.    For twenty (20) months, from May 2017 through December 2018, and continuing, Defendant intentionally and repeatedly harassed, demeaned, defamed, humiliated, and threatened Plaintiff, as set forth in paragraphs 12-79 of this Complaint, from behind a network of pseudonyms.

137.    Defendant acted at all relevant times with malicious intent to cause Plaintiff serious emotional distress, or at very least with a wanton and willful disregard of the serious emotional distress that Plaintiff would certainly suffer from Defendant's despicable and morally reprehensible conduct.   The content published by Defendant has no redeeming commercial,

political, or educational qualities, or any other reason for being published other than to cause emotional distress to Plaintiff.

138.    Defendant's conduct was so outrageous in character and degree as to go beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized community. Specifically, Defendant repeatedly, over nearly two years, and the entirety of Plaintiff's pregnancy, created and used anonymous Facebook profiles to disseminate false, derogatory, and malicious information and accusations concerning Plaintiff and her family to the public, and to threaten the physical safety of Plaintiff and her family, particularly at meaningful times in Plaintiff's life, including after she entered a new romantic relationship, learned she was pregnant, became engaged, gave birth to her first-born, and celebrated her birthday.

139.    At all relevant times, Defendant's conduct was likely or certain to cause serious emotional harm to Plaintiff.

140.    Defendant continued his course of conduct despite knowledge at all relevant times that it was likely or certain to cause serious emotional harm to Plaintiff, as evidenced by the content's false and derogatory nature, absence of any redeeming qualities, and singular focus on Plaintiff, as well as by Defendant's efforts to remain anonymous.

141.    As a result of the individual and cumulative effect of Defendant's unrelenting attacks on Plaintiff, her character, and her romantic partner – further exacerbated by the sustained nature of the conduct and Defendant's anonymity – Plaintiff has suffered grievous mental and physical suffering, including nearly two years of near-constant humiliation, paranoia, stress, anxiety, anger and fear that has manifested physically in headaches, an inability to remain in public spaces for prolonged periods, difficulty nursing her infant child, and, most seriously, the premature, life-threatening birth of her child.  Plaintiff's injuries were further exacerbated by the

27

fact that she not only saw the content published in real-time on Facebook, but also learned of the content from concerned friends and families who viewed the content. The emotional distress caused by Defendant has forced Plaintiff to seek medical treatment. In addition, Plaintiff has been forced to spend money on additional security measures for her home to address her anxiety that occurs when alone and on medical treatment related to the premature birth of her child.

142.    The emotional distress suffered by Plaintiff as a result of Defendant's conduct is so severe that no reasonable person similar to Plaintiff could be expected to endure such distress.

143.    A reasonable person similar to Plaintiff would be expected to suffer genuine and substantial emotional distress or mental harm as a result of Defendant's conduct.

**E.    Fifth Cause Of Action – Stalking.**

144.    Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein

145.    For twenty (20) months, from May 2017 through December 2018, and continuing, Defendant intentionally used and continues to use social networking site Facebook to publish communications intended to harass Plaintiff.

146.    During that period, Defendant repeatedly sent, posted, commented, and suggested significant lewd, indecent, and obscene material about Plaintiff on Facebook, as set forth in paragraphs 12-79 of this Complaint.

147.    During that period, Defendant threatened physical harm to Plaintiff on Facebook. Specifically, that Defendant would like to murder Plaintiff and her loved ones by feeding them a "broth" of Legionella bacteria.

148.    At all relevant times, Defendant acted with malicious intent to harass and emotionally harm Plaintiff.

149.    Defendant's conduct caused Plaintiff emotional distress and to fear for her safety and the safety of her fiancée, Mr. Blythe, and their infant child.

150.    Defendant's conduct would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.

151.    As a result of Defendant's conduct, Plaintiff has suffered grievous mental and physical suffering and humiliation.  Plaintiff has further been forced to spend money on security measures for her home, medical treatment related to the premature birth of her child, and therapy.

**F.    <u>Sixth Cause Of Action – Cyber-Harassment.</u>**

152.    Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

153.    For twenty (20) months, from May 2017 through December 2018, and continuing, Defendant intentionally used and continues to use social networking site Facebook to send public and private communications intended to harass Plaintiff.

154.    During that period, Defendant repeatedly sent, posted, commented, and suggested significant lewd, indecent, and obscene material about Plaintiff on Facebook, as set forth in paragraphs 12-79 of this Complaint.

155.    During that period, Defendant also threatened physical harm to Plaintiff on Facebook.  Specifically, that Defendant would like to murder Plaintiff and her loved ones by feeding them a "broth" of Legionella bacteria.

156.    At all relevant times, Defendant acted with malicious intent to harass and emotionally harm Plaintiff.

157.    Defendant's conduct emotionally harmed Plaintiff and placed her in fear of physical and emotional harm.

158.     Defendant's conduct would emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his or her person.

159.     As a result of Defendant's conduct, Plaintiff has suffered grievous mental and physical suffering and humiliation.   Plaintiff has further been forced to spend money on security measures for her home, medical treatment related to the premature birth of her child, and therapy.

## G.     Seventh Cause Of Action – Punitive Damages.

160.     Plaintiff repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein

161.     For twenty (20) months, from May 2017 through December 2018, and continuing, Defendant intentionally used Facebook to harass, demean, defame, humiliate, and threaten Plaintiff, as set forth in paragraphs 12-79 of this Complaint.

162.     At all relevant times, Defendant's conduct was likely or certain to cause serious emotional harm to Plaintiff.

163.     Defendant acted at all relevant times with malicious intent to cause serious emotional harm to Plaintiff with knowledge that his conduct was likely or certain to cause serious emotional harm to Plaintiff, or at very least with a wanton and willful disregard of the serious harm that would arise from his despicable and morally reprehensible conduct.

164.     Defendant continued on his course of conduct despite knowledge at all relevant times that his conduct was likely or certain to cause serious emotional harm to Plaintiff.

165.     Defendant intentionally concealed his identity by utilizing five fake Facebook profiles solely created and intended for the purpose of harassing Plaintiff.  However, similarities across the profiles, namely, the singular focus on Plaintiff; the similarity in published content; the repetition of uncommon words, including "bimbo;" and the temporal proximity of posts (including posting on the same photograph on a third-party profile from multiple accounts within the span of

two hours) confirm that Defendant created and operates all five fake Facebook profiles.  The number of fake profiles is further indication that Defendant knowingly sought to avoid repercussions for his illicit and immoral conduct.

166.    Defendant's conduct continues undeterred through present day.

**H.    <u>Eighth Cause Of Action – Injunctive Relief.</u>**

167.    Plaintiff incorporates by reference all allegations of this Complaint as though fully set forth herein.

168.    Plaintiff is informed and believes, and on that basis alleges, that Defendant will continue in the future the pattern of conduct as described in this Complaint unless restrained and enjoined by this Court.

169.    The wrongful conduct of Defendant, unless restrained and enjoined by this Court, will cause great and irreparable damage and harm to Plaintiff, including post-traumatic stress disorder, a known result of stalking and harassment.

170.    Plaintiff has no adequate remedy at law for the injuries and damages Plaintiff has suffered, and will continue to suffer, unless Defendant's wrongful conduct is restrained and enjoined.  It is, and will be, impossible for Plaintiff to determine the precise amount of damages, and no amount of money can compensate Plaintiff for the severe emotional distress suffered as a result of Defendant's continued terrorizing of Plaintiff.

**VI.**

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Defendant and in favor of Plaintiff on each and every claim, awarding Plaintiff the following relief:

a)  Nominal and compensatory damages in an amount to be determined at trial;

b)  Punitive damages in an amount to be determined at trial;

31

c)  An injunction enjoining until final hearing, and then permanently enjoining, Defendant, and anyone acting on behalf of Defendant, from engaging in any further conduct of the type described in this Complaint;

d)  Interest, costs, and disbursements of this action, including attorney's fees; and

e)  Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         December 21, 2018

Respectfully submitted,

By:  _____
         Maxwell D. Herman

**BREWER STOREFRONT, PLLC**

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (212) 224-6324
Facsimile:  (214) 653-1015

**ATTORNEY FOR PLAINTIFF**

0500-02
4852-2301-7090, v. 4

32

4852-2301-7090.4
0500-02