Maxwell D. Herman (Attorney ID No. 134202014)
BREWER STOREFRONT, PLLC
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:   (212) 224-6324
Facsimile:   (214) 653-1015

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SHIRLY KORCHAK,** | § | **CASE NO. 3:18-cv-17575-BRM-DEA** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **MEMORANDUM OF LAW IN** |
| **JOHN DOE, user of Facebook profiles** | § | **SUPPORT OF PLAINTIFF'S** *EX* |
| **"Moore Nicole," "Korchak Shirl,"** | § | *PARTE* **MOTION FOR LEAVE** |
| **"Brian Mc," "Rocky Rowe," and "Chi** | § | **TO SERVE THIRD PARTY** |
| **Chi," and JANE DOES 1-30,** | § | **SUBPOENAS PRIOR TO** |
| | § | **RULE 26(f) CONFERENCE** |
| | § | |
| **Defendants.** | § | |

I. PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT ...........................................................................................................3

    A.     Good Cause Exists To Grant The Motion.................................................3

          1.     Plaintiff alleges *prima facie* claims for relief in the Complaint..................4

          2.     Plaintiff seeks specific information. ......................................................10

          3.     Plaintiff has no alternative means to obtain Defendant's identity. ...........12

          4.     Plaintiff must obtain the information to advance her claims. ...................12

          5.     Plaintiff's interest in the information outweighs Defendant's interest
               in anonymity  ......................................................................................13

    B.     Plaintiff Requires Emergent Relief........................................................14

III.     CONCLUSION...............................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)........................................................................................4

*Blakeslee v. Clinton County*,
   336 Fed.Appx. 248 (3d Cir. 2009) ...............................................................................3

*BMG Music v. Doe # 4*,
   No. 1:08-cv-135, 2009 WL 2244108 (M.D.N.C. July 24, 2009)......................................11, 13

*Brown v. Owens-Corning1nv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010) .......................................................................................3

*Buckley v. Trenton Sav. Fund Soc.*,
   111 N.J. 355 (1988) ....................................................................................................7

*Century Media, Ltd. v. John Does 1-77*,
   No. 2:12-CV-3911 .....................................................................................................13

*Columbia Ins., Co., v. Seescandy et al.*,
   185 F.R.D. 573 (N.D. Cal. 1999)................................................................................12

*Costello v. City of Brigantine*,
   No. 99-cv-4072-JBS, 2001 WL 732402 (D.N.J. June 28, 2001)...............................7

*Davis v. Kelly*,
   160 F.3d 917 (2d Cir. 1998)..........................................................................................3

*Dean v. Barber*,
   951 F.2d 1210 (11th Cir. 1992) ....................................................................................3

*Del Mastro v. Grimado*,
   No. 03-cv-388-BER-C, 2005 WL 2002355 (N.J. Super. Ct. Ch. Div. Aug. 19,
   2005) ............................................................................................................................8

*Getaway.com LLC v. Does*,
   No. 2:15-cv-531-SLR, 2015 WL 4596413 (D. Del. July 30, 2015) ...........................3

*Green v. Doe*,
   260 Fed.Appx. 717 (5th Cir. 2007)...............................................................................3

*Group, Inc. v. Doe*,
    No. 5:08-cv-115-FL, 2008 WL 5111886 (E.D.N.C. Dec. 4, 2008) ........................................12

*Guest v. Leis*,
    255 F.3d 325 (6th Cir. 2001) ...................................................................................................13

*Hickox v. Christie*,
    205 F. Supp. 3d 579 (D.N.J. 2016) ...................................................................................5, 6, 7

*Krueger v. Doe*,
    162 F.3d 1173 (10th Cir. 1998) .................................................................................................3

*Maclin v. Paulson*,
    627 F.2d 83 (7th Cir. 1980) .......................................................................................................3

*Malibu Media, LLC v. Doe*,
    No. 2:13-cv-259-FTM-99, 2013 WL 2154818 (M.D. Fla. May 17, 2013) ...........................13

*Malibu Media, LLC v. Doe*,
    No. 2:13-cv-4660-JAP-DEA, (ECF No. 5) at 2 (D.N.J. Aug. 19, 2013). ..................................3

*Malibu Media, LLC v. Doe*,
    No. 2:14-cv-3945-MAS (ECF No. 10) (D.N.J. June 18, 2015) ...................................................3

*Malibu Media, LLC v. Doe*,
    No. 2:15-cv-6724-ES, 2015 WL 5666734 (D.N.J. Sept. 25, 2015) ...........................................3

*Malibu Media, LLC v. Doe*,
    No. 2:18-cv-16504-MCA-MAH, 2018 WL 6381884 (D.N.J. Dec. 6, 2018) .............................3

*Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98*,
    98 F. Supp. 3d 693 (D.N.J. 2015) .............................................................................................3

*Munz v. Parr*,
    758 F.2d 1254 (8th Cir. 1985) ...................................................................................................3

*Patrick Collins, Inc. v. Does*,
    No. 2:12-cv-3907-ES-CLW, 2012 WL 12903893 (D.N.J. Aug. 17, 2012) ...............3, 4, 12, 13

*Penalbert-Rosa v. Fortuno-Burset*,
    631 F.3d 592 (1st Cir. 2011) .....................................................................................................3

*Rumbauskas v. Cantor*,
    266 N.J. Super. 399 (App. Div. 1993), *rev'd on other grounds*, 138 N.J. 173
    (1994) ....................................................................................................................................9, 10

*Strike 3 Holdings, LLC v. John Doe*,
    No. 2:18-cv-14126-MCA-MAH, 2018 WL 6258927 (D.N.J. Nov. 28, 2018) .........................3

*W.J.A. v. D.A.*,
  210 N.J. 229 (2012) ...........................................................................................................4

*Young v. Transp. Deputy Sheriff I*,
  340 Fed.Appx. 368 (9th Cir. 2009)..................................................................................3

**Statutes**

N.J.S.A. § 2C:12-10................................................................................................................13

N.J.S.A. § 2C:33-4.1..............................................................................................................13

**Other Authorities**

FED. R. CIV. P. 4....................................................................................................................10

FED. R. CIV. P. 26............................................................................................................ *passim*

FED. R. CIV. P. 45........................................................................................................2, 3, 14

Pursuant to Federal Rule of Civil Procedure 26(d)(1), Plaintiff Shirly Korchak hereby submits this Memorandum in support of her Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, as follows:

## I.

## <u>PRELIMINARY STATEMENT</u>

For nearly two years, Plaintiff Shirly Korchak ("Plaintiff") has been subjected to a systematic, escalating campaign of online harassment and defamation by an anonymous online stalker ("Defendant").  Defendant's unprovoked campaign has injured Plaintiff's reputation and relationships and caused her to suffer emotional, financial, and physical harm.  Meanwhile, Defendant, who stalks Plaintiff using various online pseudonyms, remains anonymous.

On December 21, 2018, Plaintiff filed a complaint (the "Complaint") in this Court to put a stop to Defendant's continued torment of Plaintiff before it escalates from defamation and threats to violence.  In the Complaint, Plaintiff seeks injunctive relief that restrains Defendant from continued tortious conduct and seeks monetary relief that compensates Plaintiff – and punishes Defendant – for the harm inflicted by Defendant from the safety of his keyboard.[1]  Plaintiff's complaint alleges causes of action for defamation, false light, intrusion into seclusion, intentional infliction of emotional distress, cyber-harassment, and stalking.[2]

In order for Plaintiff to obtain complete relief and to meet her obligation to serve Defendant with process under the Federal Rules, Plaintiff must determine the identity of Defendant. However, because Defendant has acted solely through pseudonymous profiles on the social networking website www.facebook.com ("Facebook"), Plaintiff only knows Defendant by the

---

[1] *See* Complaint filed by Shirly Korchak § VI (ECF No. 1) ("Complaint").
[2] *See id.* ¶¶ 86-170.

1

names of his fake Facebook profiles: "Moore Nicole," "Korchak Shirl," "Brian Mc," "Rocky Rowe," and "Chi Chi."[3]

Accordingly, Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the business Facebook, Inc., owner/operator of Facebook.[4]  Plaintiff's subpoena will command Facebook Inc. to produce the registration information used by Defendant to register and create the five (5) fake profiles on Facebook (name, address, email address, and phone number), and a time-stamped log of Internet Protocol ("IP") address(es) associated with Defendant's operation of the profiles, as well as the specific time-stamps recorded by Facebook when Defendant posted or messaged the defamatory, threatening, and harassing content.

Each IP address used by Defendant is unique and was assigned to Defendant by an Internet Service Provider ("ISP") when he created the fake profiles, logged-on to Facebook, and posted the tortious content.[5]   Therefore, if Plaintiff is unable to identify Defendant by his Facebook registration information, Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the ISP that assigned the IP address(es) to Defendant.  Plaintiff's subpoena will command the ISP to produce the subscriber information associated with the IP address(es), including the name, address, telephone number, and email address of the Defendant.  Without this information, Plaintiff cannot pursue her lawsuit and enforce her rights to be free of defamation, harassment, and threats of physical violence in the State of New Jersey.

---

[3] *See id.* ¶¶ 2, 13, 18, 26, 45, 51.

[4] *See* Company Overview of Facebook, Inc., Bloomberg, accessed on January 4, 2019, at https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=20765463.

[5] Encyclopedia Britannica defines "IP address" as a "[n]umber that uniquely identifies each computer on the internet.  A computer's IP address may be permanently assigned or supplied each time that it connects to the internet by and Internet service provider."  *See* IP address, Encyclopedia Britannica, accessed on January 4, 2019, at https://www.britannica.com/technology/IP-address.

## II.

## ARGUMENT

Federal Rule of Civil Procedure ("Rule") 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." The Court, however, may grant leave to conduct discovery prior to that conference.[6] Pursuant to Rule 26(b), federal courts faced with motions for leave to serve expedited discovery to ascertain the identity of anonymous defendants "often apply the 'good cause' test."[7] Federal Circuit Courts have unanimously approved the procedure of suing anonymous defendants and using discovery to identify such defendants.[8]

### A.     Good Cause Exists To Grant The Motion.

In the case of lawsuits against anonymous actors on the Internet, courts in the District of New Jersey have found that good cause exists to issue a Rule 45 subpoena to discover an anonymous defendant's identity prior to a Rule 26(f) conference where: (1) plaintiff makes a *prima facie* showing of a claim for relief, (2) plaintiff submits a specific discovery request, (3) there are

---

[6] *See* FED. R. CIV. P. 26(b) ("[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *see, e.g., Getaway.com LLC v. Does*, No. 15-cv-531-SLR, 2015 WL 4596413, at *2 (D. Del. July 30, 2015) (granting plaintiffs' *ex parte* motion for pre-service discovery to identify anonymous defendants that posted allegedly defamatory material on online message board).

[7] *Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-14126-MCA-MAH, 2018 WL 6258927, at *2 (D.N.J. Nov. 28, 2018).

[8] *See, e.g.*, *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998); *accord Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011); *Brown v. Owens-Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010); *Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009); *Young v. Transp. Deputy Sheriff I*, 340 Fed.Appx. 368 (9th Cir. 2009); *Green v. Doe*, 260 Fed.Appx. 717, 719 (5th Cir. 2007); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980).

no alternative means to obtain the subpoenaed information, (4) there is a central need for the subpoenaed information, and (5) the defendant has a minimal expectation of privacy.[9]

### 1.   Plaintiff alleges *prima facie* claims for relief in the Complaint.

#### a.   Libel

Plaintiff has a *prima facie* claim for libel.  In New Jersey, "a statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him."[10]  A written defamatory statement gives rise to a claim for libel.[11]  In cases of libel, damages are presumed.[12] "Presumed damages are a procedural device which permits a plaintiff to obtain a damage award without proving actual harm to his reputation."[13]

Damages which may be recovered in an action for defamation are: "(1) compensatory or actual, which may be either (a) general or (b) special; (2) punitive or exemplary; and (3) nominal."[14]  Actual damages "includes impairment to reputation and standing in the community,

---

[9] *See, e.g., Patrick Collins, Inc. v. Does*, No. 12-cv-3907-ES-CLW, 2012 WL 12903893, at *1 (D.N.J. Aug. 17, 2012); *see also Strike 3 Holdings, LLC*, No. 18-cv-14126-MCA-MAH, 2018 WL 6258927, at *2; *Malibu Media, LLC v. Doe*, No. 18-cv-16504-MCA-MAH, 2018 WL 6381884, at *2 (D.N.J. Dec. 6, 2018); *Malibu Media, LLC v. Doe*, No. 14-cv-3945-MAS (D.N.J. June 18, 2015) (ECF No. 10); *Malibu Media, LLC v. Doe*, No. 15-cv-6724-ES, 2015 WL 5666734, at *1 (D.N.J. Sept. 25, 2015); *Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98*, 98 F. Supp. 3d 693, 695 (D.N.J. 2015); *Malibu Media, LLC v. Doe*, No. 13-cv-4660-JAP-DEA, slip op. (ECF No. 5) at 2 (D.N.J. Aug. 19, 2013).

[10] *W.J.A. v. D.A.*, 210 N.J. 229, 238 (2012) (citations omitted).

[11] *See id.* at 239.

[12] *See id.* at 240.

[13] *Id.* at 239.  A spoken defamatory statement gives rise to a claim for slander.  In cases of slander, unlike libel, proof of special damages is required unless the statement is defamatory *per se* (*e.g.,* accuses the subject of criminal activity, a loathsome disease, misfeasance in business, or serious sexual misconduct).  *Id.*  In this case, the distinction between libel and slander is not relevant because Plaintiff alleges that Defendant's false statements concerned serious sexual misconduct, and because Plaintiff alleges special damages.  *See, e.g.*, Complaint ¶¶ 34, 53, 59, 61, 64, 80-85.

[14] *W.J.A.*, 210 N.J. at 239.

along with personal humiliation, mental anguish, and suffering to the extent that they flow from the reputational injury."[15]

Plaintiff satisfied the first good cause factor by properly pleading a cause of action for libel in the Complaint and providing a declaration attesting to the facts alleged in support.[16] Specifically, Plaintiff alleges that: (1) Defendant published a series of false written statements concerning Plaintiff[17]; (2) the false written statements were published on public profiles on Facebook where they were seen by Plaintiff's family, friends, acquaintances, business associates, and hundreds or even thousands of other Facebook users[18]; (3) the false written statements accused Plaintiff of serious sexual misconduct susceptible to only defamatory meaning, including that Plaintiff has and/or continues to: participate in pornography,[19] work as an erotic dancer,[20] and engage in extreme sexual promiscuity[21]; and (4) Plaintiff has suffered injury in her good name and reputation, and resulting humiliation, mental anguish, and physical injury as a result.[22]

Accordingly, Plaintiff met her obligation to make a *prima facie* showing of a claim for libel.[23]

---

[15] *Id.*

[16] *See* Complaint ¶¶ 86-104; Declaration of Shirly Korchak ("Korchak Decl.") ¶ 4; *see e.g., Patrick Collins, Inc.*, No. 12-cv-3907-ES-CLW, 2012 WL 12903893, at *2 (finding the first good cause factor to be satisfied where plaintiff sufficiently alleged copyright infringement in the complaint and provided a declaration in support of some of plaintiff's allegations); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (expressing skepticism whether a plaintiff need submit evidentiary support in addition to a well-pleaded complaint in order to satisfy the first good cause element).

[17] *See* Complaint ¶ 88, 100-101.

[18] *See id.* ¶ 102.

[19] *See id.* ¶¶ 93, 95, 98.

[20] *See id.* ¶¶ 93, 98, 99.

[21] *See id.* ¶¶ 89-92, 96, 97.

[22] *See id.* ¶¶ 80-85, 104. Of course, because Plaintiff's claim is for libel and concerns false accusations of serious sexual misconduct, actual damages (though pleaded by Plaintiff) are unnecessary. *See supra* n.13.

[23] *See supra* n.16.

### b.    Invasion of Privacy (False Light)

Plaintiff has a *prima facie* claim for invasion of privacy (false light) against Defendant.  In New Jersey, the tort of false light involves "publicity that unreasonably places the other in a false light before the public."[24] The tort has two essential elements: "(1) the false light in which the other was placed would be highly offensive to a reasonable person," and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[25]

Plaintiff satisfied the first good cause factor by properly pleading a cause of action for invasion of privacy (false light) in the Complaint and providing a declaration attesting to the facts alleged in support.[26]  Specifically, Plaintiff alleges that:  (1) Defendant published a series of false and highly offensive written statements concerning Plaintiff[27]; (2) the statements were published on photographs of Plaintiff and public profiles on Facebook where they were seen by Plaintiff's family, friends, acquaintances, business associates, and hundreds or even thousands of other Facebook users[28]; (3) the statements caused Plaintiff to appear before the public in a false light – specifically as a woman who works and has worked as a pornographic actress,[29] erotic dancer,[30] and sex worker[31]; who engages and has engaged in extreme sexual promiscuity[32]; who is physically misshapen and grotesque[33]; who is unintelligent and illiterate[34]; and who is of poor

---

[24] *Hickox v. Christie*, 205 F. Supp. 3d 579, 604–05 (D.N.J. 2016).
[25] *Id.*
[26] *See* Complaint ¶¶ 105-25; Korchak Decl. ¶ 4.
[27] *See* Complaint ¶¶ 106-119.
[28] *See id.* ¶ 123.
[29] *See id.* ¶¶ 114, 117, 118(q).
[30] *See id.* ¶¶ 114, 118(q)(s).
[31] *See id.* ¶ 115.
[32] *See id.* ¶¶ 107-110, 118(c),(h),(n).
[33] *See id.* ¶¶ 111-112.
[34] *See id.* ¶¶ 118(a),(m).

moral character[35] – that would be highly offensive to a reasonable person[36]; and (5) Defendant had knowledge of, or acted in reckless disregard of, the falsity of the statements and the false light in which Plaintiff would be placed.[37]

Accordingly, Plaintiff met her obligation to make a *prima facie* showing of a claim for invasion of privacy (false light).[38]

### c.   Intentional Infliction of Emotional Distress

Plaintiff has a *prima facie* claim for intentional infliction of emotional distress against Defendant.  In New Jersey, the tort of intentional infliction of emotional distress has four elements: "(1) defendant engaged in conduct that was so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community'; [] (2) the conduct was intended to produce the emotional distress, or was in deliberate disregard of a high probability that emotional distress will follow; [] (3) the plaintiff suffered emotional distress that is so severe that no reasonable person could be expected to endure it; and (4) defendant's actions were the proximate cause of the plaintiff's emotional distress."[39]

Plaintiff satisfied the first good cause factor by properly pleading a cause of action for intentional infliction of emotional distress in the Complaint and providing a declaration attesting to the facts alleged in support.[40]  Specifically, Plaintiff alleges that:  (1) Defendant engaged and continues to engage in a years-long effort to terrorize Plaintiff; harm her romantic relationship; destroy her reputation by publicly posting lewd, derogatory, and defamatory content concerning

---

[35] *See id.* ¶¶ 118(f), 119.

[36] *See id.* ¶ 124.

[37] *See id.* ¶¶ 120-21.

[38] *See, e.g.*, *Hickox*, 205 F. Supp. 3d at 605.

[39] *Costello v. City of Brigantine*, Case No. 99-cv-4072-JBS, 2001 WL 732402, at *22 (D.N.J. June 28, 2001) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988)).

[40] *See* Complaint ¶¶ 135-43; Korchak Decl. ¶ 4.

Plaintiff; and threaten Plaintiff and her family with physical harm, specifically, via poisoning, on a public forum from behind a network of pseudonyms at specific, meaningful times in Plaintiff's life[41]; (2) Defendant's conduct could not have had any purpose other than to inflict emotional distress because it had no commercial, political, or educational qualities or any other reason for being published other than to defame and threaten Plaintiff and her family, a conclusion reinforced by Defendant's efforts to remain anonymous[42]; (3) Plaintiff suffers, and has suffered, severe, sustained humiliation, paranoia, stress, anxiety, anger, and fear for nearly two years due to the individual and cumulative effects of Defendant's unrelenting attacks on Plaintiff, her character, and her romantic partner, which have been exacerbated by the constant nature of the conduct and by Defendant's anonymity.[43]  Plaintiff's severe emotional distress has also manifested physically in headaches, an inability to remain in public spaces for prolonged periods, difficulty nursing her infant child, and contributed to the premature, life-threatening birth of her child[44]; and (4) the emotional distress suffered by Plaintiff has been and is directly caused by Defendant's conduct.[45]

Accordingly, Plaintiff met her obligation to make a *prima facie* showing of a claim for intentional infliction of emotional distress.[46]

### d.   Invasion of Privacy (Intrusion Into Seclusion)

Plaintiff has a *prima facie* claim for invasion of privacy (intrusion into seclusion) against Defendant.  In New Jersey, "[o]ne who intentionally intrudes, physically or otherwise, upon the

---

[41] *See* Complaint ¶¶ 135-138.
[42] *See id.* ¶ 137, 140.
[43] *See id.* ¶ 141.
[44] *See id.*
[45] *See id.* ¶ 142.
[46] *See, e.g., Del Mastro v. Grimado*, No. 03-cv-388-BER-C, 2005 WL 2002355, at *3 (N.J. Super. Ct. Ch. Div. Aug. 19, 2005) (denying summary judgment where plaintiff established that defendant intentionally distributed sexually explicit photographs to family members, which resulted in "flashbacks, [] trouble sleeping and [] intermittent anxiety and panic attacks to this day," as corroborated by witnesses and plaintiff's expert witness).

solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his [or her] privacy, if the intrusion would be highly offensive to a reasonable person."[47]  "Intrusion upon seclusion, like defamation per se, is actionable in the absence of proof of resulting special harm."[48]  In *Rumbauskas v. Cantor*, the Appellate Division for the Superior Court of New Jersey provided the following example of conduct that gives rise to a claim for intrusion into seclusion:

> [T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.[49]

Plaintiff satisfied the first good cause factor by properly pleading a cause of action for invasion of privacy (intrusion into seclusion) in the Complaint and providing a declaration attesting to the facts alleged in support.[50]  Plaintiff alleges that Defendant intentionally hounded her over the internet for nearly two years by publishing false and derogatory content on public profiles where Plaintiff, her family, and community would see the content, and by sending private, false, and disturbing messages to Plaintiff and her family concerning Plaintiff.[51]  Plaintiff alleges that Defendant's conduct is continuing.[52]  Since May 2017, Defendant has interfered with Plaintiff's family relationships, publicly suggested her incompetency as a mother, threatened her with physical harm, created a public Facebook profile that impersonates and mocks Plaintiff, and published numerous and varied derogatory and defamatory statements concerning Plaintiff.[53]  In

---

[47] *Rumbauskas v. Cantor*, 266 N.J. Super. 399, 402 (App. Div. 1993), *rev'd on other grounds*, 138 N.J. 173 (1994).
[48] *See id.* at 405.
[49] *See id.* at 403.
[50] *See* Complaint ¶¶ 126-34; Korchak Decl. ¶ 4.
[51] *See* Complaint ¶¶ 127-28.
[52] *See id.* ¶ 127.
[53] *See id.* ¶ 129.

addition, Defendant's conduct has been persistent and increasing in frequency.[54]  Over the last twenty-one (21) months, Defendant has published content or sent messages concerning Plaintiff at least forty-two (42) times, an average of twice every month, including throughout the entirety of Plaintiff's pregnancy – of which Defendant surely was aware based upon the timing of his conduct.[55]  Finally, Defendant's conduct was and remains highly offensive to Plaintiff and to a reasonable person because it concerns Plaintiff's romantic relationship, fitness as a mother, sexual dignity, and false accusations of her involvement in pornography and erotic dancing.[56]

Accordingly, Plaintiff met her obligation to make a *prima facie* showing of a claim for invasion of privacy (intrusion into seclusion).[57]

### 2.  Plaintiff seeks specific information.

Plaintiff seeks specific information through discovery that will allow her to serve Defendant with process and meet her obligations under the Federal Rules.[58]  Plaintiff seeks to obtain from Facebook, Inc. the IP address(es) associated with the five (5) fake profiles used by Defendant to engage in the tortious conduct set forth in the Complaint[59] and the registration

---

[54] *See id.* ¶ 130.

[55] *See id.* ¶¶ 130, 139.

[56] *See id.* ¶ 132.

[57] *See Rumbauskas*, 266 N.J. Super. at 402 (finding that the plaintiff sufficiently alleged intrusion into seclusion where the defendant sent letters to the plaintiff in an effort to interfere with her romantic relationship and with the custody of her daughter; threatened the plaintiff with physical harm; and put up signs on his property publicly proclaiming his feelings for the plaintiff); *see also* Restatement (Second) of Torts § 652B (1977) (providing the following example of intrusion into seclusion:  "A, a professional photographer, seeking to promote his business, telephones B, a lady of social prominence, every day for a month, insisting that she come to his studio and be photographed. The calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests to desist. A has invaded B's privacy.").

[58] *See* Fed. R. Civ. P. 4(c).

[59] Specifically, a time-stamped log of IP address(es) associated with the user of the profiles listed in paragraphs ¶¶ 2, 13, 18, 26, 45, 51 of the Complaint and the time-stamps associated with the tortious online activity listed in the Complaint.

information (name, address, email address, phone number) used by Defendant to register each of the five (5) fake profiles.  According to Facebook, Inc., this information is in its possession.[60]

Plaintiff will use the IP address(es) obtained from Facebook, Inc. to identify the ISP that issued the IP address(es) to Defendant.[61]  Once the ISP is identified, Plaintiff seeks to obtain from the ISP the name, address, email address, and telephone number of the subscriber assigned the IP address – *i.e.,* Defendant – information in the ISP's possession.[62]

The information set forth above is specific and limited to information that will allow Plaintiff to serve process on Defendant.[63]  The information will not be used for any purpose other than to identify Defendant.  Therefore, Plaintiff seeks specific, limited information through expedited discovery and has satisfied the second good cause factor.[64]

---

[60] *See* Exhibit A to the Declaration of Maxwell D. Herman ("Herman Decl.") (a Facebook user can download from Facebook "[a]ll stored active sessions, including date, time, device, IP address, machine cookie and browser information," "[c]ontact information that may be associated with your account," "[t]he name on your Facebook account," "[m]obile phone numbers you've added to your account" and "[e]mail addresses added to your account.").

[61] *See* Herman Decl. ¶ 5.

[62] Three ISPs account for nearly two-thirds of all internet subscriptions in the United States. *See* 455,000 Added Broadband in 2Q 2018, Leichtman Research Group, accessed on January 4, 2019, at  https://www.leichtmanresearch.com/455000-added-broadband-in-2q-2018/.   All three ISPs represent that they "can provide historic Internet Protocol assignment and session information." Law Enforcement Handbook, Comcast Cable, page 2, accessed on January 4, 2019, at https://www.xfinity.com/~/media/403eeed5ae6f46118ddbc5f8bc436030; *see* Legal Request for Subscriber Information, Spectrum, accessed on January 4, 2019, at https://www.spectrum.com/policies/lea.html; AT&T Internet Services – Additional Subpoena Information, page 2, accessed on January 4, 2019, at https://www.aclu.org/files/pdfs/email-content-foia/DOJ%20Crim%20Div%20docs/CRM-183.pdf.

[63] *See, e.g.,* Letter Order dated September 24, 2014, *Malibu Media, LLC v. John Doe subscriber assigned IP address 68.38.209.12*, Civil Action No.: 2:14-cv-3945-MAS-DEA (ECF No. 10), at 4-6; *Sony Music Entm 't v. Does 1-40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004); *BMG Music v. Doe # 4*, No. 1:08-cv-135, 2009 WL 2244108, at *3 (M.D.N.C. July 24, 2009).

[64] *See supra* n.63.

3.      **Plaintiff has no alternative means to obtain Defendant's identity.**

There is no way to obtain Defendant's identity other than by the process outlined above. Defendant has gone to great lengths to hide his identity by creating and engaging in improper conduct exclusively by way of fake online profiles.  Defendant uses pseudonyms for each profile and the only identifying information provided by Defendant on the profiles is that he resides in West Hollywood, California and Austin, Texas.[65]

Plaintiff and counsel have made attempts to determine the identity of Defendant through other means without success.[66]  In addition, Facebook, Inc.'s policy is to provide the IP address of a user only "upon personal service of a valid subpoena . . . ."[67]  In addition, "only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate the IP address to a real person, the subscriber of the internet service."[68]

Therefore, because there is no other way for Plaintiff to obtain Defendant's identity except by way of the discovery outlined above, Plaintiff has satisfied the third good cause factor.[69]

4.      **Plaintiff must obtain the information to advance her claims.**

Plaintiff cannot advance her claims absent the requested discovery.  There is no way to obtain Defendant's identity other than by way of the requested discovery.[70]  Without learning Defendant's identity, Plaintiff will be unable to serve Defendant with process and advance her

---

[65] *See* Complaint ¶ 5.
[66] *See* Herman Decl. ¶ 6.
[67] *See* Exhibit B to the Herman Decl.
[68] *Patrick Collins, Inc.*, No. 12-cv-3907-ES-CLW, 2012 WL 12903893, at *2
[69] *See, e.g.*, *Columbia Ins., Co., v. Seescandy et al.*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *Elektra Entm 't Group, Inc. v. Doe*, No. 5:08-CV-115-FL, 2008 WL 5111886, at *4 (E.D.N.C. Dec. 4, 2008) (finding that the feasibility of a suggested alternative method of determining anonymous online defendants' identities by hiring a private investigator to observe downloading "is questionable at best").
[70] *See supra* II.A.3.

asserted claims pursuant to the Federal Rules.[71]  In addition, the equities weigh heavily in favor of preserving Plaintiff's rights:  Defendant's conduct violates the laws of the state of New Jersey set forth to protect New Jersey citizens from tortious acts and resulting harms such as those described in the Complaint, but will go unchecked absent the requested discovery.  Therefore, because identifying Defendant is necessary for Plaintiff to advance her asserted claims, Plaintiff has satisfied the fourth good cause factor.[72]

> **5.**     **Plaintiff's interest in the information outweighs Defendant's interest in anonymity.**

Plaintiff has a strong legitimate interest in protecting her right to maintain free of defamation, intrusion, and harassment as established by the existence of the common law and statutory prohibitions against such conduct.[73]  In contrast, Defendant is a tortfeasor with no legitimate expectation of privacy in the subscriber information he provided to his ISP, or the IP information collected by Facebook, Inc., which he used solely to conduct intentional and malicious tortious acts without any redeeming social, political, commercial, or educational qualities.[74]

---

[71] *See* FED. R. CIV. P. 26(f).

[72] *See Century Media, Ltd. v. John Does 1-77*, No. 2:12-CV-3911 DMCJAD, 2013 WL 868230, at \*4 (D.N.J. Feb. 27, 2013) (granting Plaintiff limited expedited discovery to obtain from an ISP the name and address associated with an IP address where the "Court recognize[d] that Plaintiff . . . should not be left without the ability to ascertain the identity of those individuals who are allegedly [engaging in improper conduct]"); *see also Malibu Media, LLC v. Doe*, 2:13-CV-259-FTM-99, 2013 WL 2154818 (M.D. Fla. May 17, 2013) ("Plaintiff has demonstrated the need for the subpoenaed information in order to advance its claims as there appears no other means of obtaining this information and the information is needed in order to prosecute Plaintiffs viable claim . . . .").

[73] *See supra* s.II.A.1.a-d; N.J.S.A. § 2C:33-4.1 (Cyber-Harassment); N.J.S.A. § 2C:12-10 (Stalking).

[74] *See Patrick Collins, Inc.*, No. 12-cv-3907-ES-CLW, 2012 WL 12903893, at \*2 ("[G]ranting Plaintiff's Motion will cause little to no prejudice to Defendants. To that end, Plaintiff's request is clear and narrow in that it seeks only to identify Defendants' contact information in order to advise it of suit, and possibly resolve this matter without additional litigation."); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person - the system operator"); *BMG Music*, No. 1:08-cv-135, 2009 WL 2244108, at \*3

Therefore, because <u>Defendant has no legitimate interest</u> in remaining anonymous because his conduct consists solely of defamation, insults, other falsities, and threats; and because Plaintiff has a strong, protected interest in remaining free from tortious conduct, Plaintiff has satisfied the fifth good cause factor and the Court should grant Plaintiff leave to serve third party subpoenas prior to a Rule 26(f) Conference on Facebook, Inc. and Defendant's ISP.

**B.      Plaintiff Requires Emergent Relief.**

Plaintiff seeks relief on an emergent basis because there is an imminent danger of the destruction of indispensable and relevant information by a third party.  According to its website, Facebook, Inc. "permanently" destroys user data on Facebook thirty (30) days following profile deactivation, although it may take up to ninety (90) days to complete the deletion process.[75] Unfortunately, Defendant deactivated profile "Korchak Shirl" more than thirty (30) days ago on or about December 5, 2018.[76]   In addition, Defendant deactivated profile "Chi Chi" on or about January 3, 2019.[77]  Therefore, it is imperative that a subpoena issue to Facebook, Inc. as soon as possible to preserve the sought-after information and identify Defendant.

**III.**
<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant Plaintiff leave to issue a Rule 45 subpoena to Facebook, Inc. and Defendant's ISP, and grant Plaintiff such other and further relief as is fair and just.  To the extent that the Court does not grant leave to Plaintiff on the basis that

---

("[p]laintiffs have shown that Defendant Doe # 4 has a minimal expectation of privacy in downloading and distributing copyrighted songs without permission"); *Sony*, 326 F.Supp.2d at 566 ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission"); *see also* Complaint ¶¶ 13, 18, 26, 45, 51.

[75] *See* Exhibit C to the Herman Decl.

[76] *See* Herman Decl. ¶ 7.

[77] *See id.* ¶ 8.

14

any claim is defective as pled, Plaintiff requests that the Court allow Plaintiff to replead and submit

a renewed Motion for Expedited Discovery thereafter.

Dated:   New York, New York
          January 8, 2019

                                  Respectfully submitted,

                         By:    /s/ *Maxwell D. Herman*
                              Maxwell D. Herman

                           **BREWER STOREFRONT, PLLC**

                           1717 Main Street, Suite 5900
                           Dallas, Texas 75201
                           Telephone:  (212) 224-6324
                           Facsimile:  (214) 653-1015

                           **ATTORNEYS FOR PLAINTIFF**

0500-02
4829-8976-0131, v. 2

16